663 So.2d 373 (1995)
Philip Richard BULLIARD, et al., Plaintiffs-Appellants,
v.
Carolyn Bulliard BIENVENU, et al., Defendants-Appellees.
No. 95-297.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
Philip Richard Bulliard, pro se.
Peter C. Jr. Piccione, Lafayette, for Carolyn Bulliard Bienvenu et al.
Before SAUNDERS and SULLIVAN, JJ., and KNIGHT[1], J. Pro Tem.
WILLIAM N. KNIGHT, Judge Pro Tem.
The main issue in this appeal is whether the trial court erred in ordering a partition in kind of approximately 13.01 acres of land and partition by licitation of a home located on the land in St. Martinville, Louisiana.

*374 FACTS

Leo J. Bulliard and his wife, Louise, were the parents of four children: Leo Jr. (Billy); Carolyn (Caro); Fred (Ed); and Philip. In 1936, Leo and Louise purchased 16 acres of land on the Bayou Teche in St. Martinville, Louisiana. Through the years, the following relevant events took place regarding the ownership of this land.
On February 27, 1947, Leo and Louise sold about 2.485 acres of land on the Bayou Teche to Billy for $500.00 cash and other valuable considerations. Leo died intestate in 1951; thus, his ½ ownership of the remaining community property was inherited by his children as follows: Billy1/8; Ed1/8; Caro1/8; and Philip1/8. On August 29, 1956, Billy, Ed, and Louise, individually, and as naturally tutrix to Philip, sold about 2.15 acres on the Bayou Teche to Caro for $500.00. Also, on that day, Louise, individually, and as natural tutrix to Philip, Billy, and Caro sold Ed about 1.66 acres of land for $500.00. However, Ed's land was not on the bayou. Therefore, on August 4, 1957, these same parties entered into an Act of Exchange, whereby Ed acquired about 2.01 acres of land on the bayou next to Caro's lot, and in return, transferred the land that he acquired in 1956 to the previous owners.
Billy died in 1956 leaving five heirs, namely: Jeanne; William; Jacques; Julliete; and Charlene. On January 10, 1975, Louise, Ed, and Billy's heirs, but not Caro, sold about 1.90 acres of land near Highway 347 to Philip. At trial, Caro agreed that she would transfer her interest in that property to Philip. In 1984, Louise sold all of her remaining interests in the property to her three surviving children. According to the terms of the sale, Louise received $100.00 per month from each child, plus a note for $44,000.00. Because the lots acquired by Caro and Ed were landlocked with no access to a public road, they acquired from the family a common servitude of passage from Highway 347 to their respective lots.
Louise died testate in 1993. As such, Ed, Caro, Philip, and Billy's heirs now co-own the following property:
1. 13.01 acres of land in St. Martinville, Louisiana, bounded on the west by the Bayou Teche; on the north by J.J. Burdin or assigns; on the east by Highway 347; and on the south by various other owners, including, Billy's heirs. The family home is also located on this 13.01 acre tract.
2. Unimproved land measuring 95.8 feet by 106.2 feet and described as Lots 5 and 8, Block 2, Labbe Addition in St. Martinville, Louisiana.
At trial, it was stipulated that as a result of the inheritance from Leo and the 1984 sale of Louise's interest in the land, the ownership interest of the heirs are now as follows:

 Caro 7/24
 Ed 7/24
 Philip 7/24
Billy's heirs:
 Jeanne 1/40
 Jacques 1/40
 William 1/40
 Julliete 1/40
 Charlene 1/40

Exhibit 1 shows a plat of the co-owned 13.01 acres which are in dispute.
On September 23, 1993, plaintiffs, Philip and Ed, filed a suit for a partition by licitation of the co-owned property. Defendants, Caro, Jeanne, William, Jacques, Julliete, and Charlene, answered the suit, asserting that the property was susceptible to a partition in kind. Philip also filed a suit for collation against the other heirs, alleging that he was entitled to the last remaining bayou lot and family home since all the other children had bayou lots. On April 22, 1994, plaintiffs filed an amended petition that requested a partition in kind of the 13.01 acres of land.
A trial on the merits was held on May 18, 1994. At trial, the judge allowed the plaintiffs and defendants to submit four different plans of partition of the 13.01 acres. The trial court rendered judgment on December 5, 1994, which denied Philip's request for collation. The trial court accepted defendants' plan number two of partition and allocated seven specific parcels of land as follows:

Tract 1 3.34 acres to Caro
Tract 2 3.34 acres to Ed
Tracts 3 and 7 3.34 acres to Philip
Tracts 4 and 6 1.43 acres to Billy's heirs

*375 Tract 5, containing about 1.56 acres and the family home, was ordered to be sold at a public auction. Exhibit 2 shows the trial court's partition of the property. The trial court also ordered that: (1) Labbe Addition Lots 5 and 8 be sold at a public sale; (2) Ed be reimbursed by the other heirs in the amount of $1,568.78 for necessary expenses paid on the Labbe Addition lots; (3) Philip be reimbursed by the other heirs in the amount of $2,269.25 for necessary expenses on the Labbe Addition lots; (4) defendants be restrained from performing any major land clearing operations on the 13.01 acres; (5) Ed be allowed to maintain horses on the property until the matter was resolved; (6) Caro transfer her interest in the lot that was acquired by Philip in 1975; and (7) all court costs and survey fees of defendants' surveyor, Alfred Fuselier, be paid by the parties in proportion of their ownership interests.
Plaintiffs appeal from that judgment and assert that the trial court erred in: (1) rendering a judgment of partition that was based on a plan developed by defendants' surveyor; (2) finding that the 13.01 acres was susceptible to a partition in kind; (3) devising a plan of partition that was unfair; (4) signing a formal judgment that was materially not in accordance with the court's reasons for judgment; and (5) ordering a vague judgment regarding the payment for services of defendants' surveyor. Since plaintiffs' first three assignments of error regarding the partition of the 13.01 acres of land are dispositive to this case, we will address them first.

LAW
Plaintiffs argue that the trial court erred in rendering a judgment of partition that was based on a plan developed by defendants' surveyor and which allocated specific parcels of land to particular parties. We agree.
In Tri-State Concrete Co., Inc. v. Stephens, 406 So.2d 205, 207-208 (La.1981), the supreme court summarized the applicable law as follows:
No one can be compelled to hold property with another; a division of a thing held in common may be demanded by the action of partition. The general rule is that partition in kind is favored over partition by licitation. Unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind. Property cannot be conveniently divided when a diminution of its value, or loss or inconvenience of one of the owners, would be the consequence of dividing it. The burden of proof is on the party seeking partition by licitation to prove that the property cannot be divided in kind.
* * * * * *
In order to effect a partition in kind, the property must be divided into lots of equal or near equal value. It is the function of experts to form the lots which thereafter must be drawn by chance, and not selected, by the co-owners. It is not within the power or province of the judge or the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the co-owners. There must be as many lots as there are shares or roots involved. [Cites Omitted.]
In other words, if property is divisible in kind, then it must be divided into lots of equal value, equal to the lowest common denominator of ownership. Murdock v. Cordova, 180 So.2d 550 (La.App. 3 Cir.1965). At that point, each owner must then by lot draw a number of lots equivalent to his or her proportionate ownership. Id.
In the case sub judice, the trial court allowed the plaintiffs and defendants to submit four different plans of partition from their respective surveyors. After hearing all the evidence, the trial court chose defendants' second plan of partition and subsequently allocated ownership according to this survey. The property was never divided into lots of equal value, equal to the lowest common denominator of ownership. The allocation of the property was not made by the drawing of lots. Thus, we find that the trial court clearly erred in ordering a partition in kind be made in accordance with the partition designated by the defendants' surveyor.
*376 Having determined that the property was improperly partitioned, we now address the question of whether the property is susceptible to partition in kind.
The 13.01 acres of property at issue is irregular in shape and has a home located thereon; a recorded servitude encumbers the property; and access to public roads are limited. As previously stated, if this property is to be partitioned in kind, the 13.01 acres must be divided into lots of equal value, equal to the lowest common denominator of ownership. The lowest common denominator of ownership in the case sub judice is 120 (7/24 × 5 = 35/120, 1/40 × 3 = 3/120). A division of the 13.01 acres into 120 equal lots would result in a number of landlocked parcels not contiguous to other property owned by the heirs. We agree with the plaintiffs that the "patch-work quilt partition" would diminish the value of the property and would inconvenience the heirs. Moreover, the fact that improvements are located on the property, alone, would render the property not susceptible to a partition in kind. Therefore, we conclude that 13.01 acres of land with a home located thereon is not susceptible to a division of partition in kind. See Doescher v. Powers, 447 So.2d 1171 (La.App. 3 Cir.1984). Where the record shows that the nature of the property is such that it cannot be conveniently divided in kind, it is not necessary to produce additional evidence in order that the property be partitioned by licitation. Loupe v. Bybee, 570 So.2d 31 (La.App. 3 Cir.1990), writ denied, 572 So.2d 94 (La.1991). Thus, we conclude that the 13.01 acres and the family home located thereon must partitioned by licitation.
In plaintiffs' fourth assignment of error, plaintiffs attempt to attack the trial court's judgment of partition in kind. Plaintiffs assert that the trial court imposed a suspensive condition on the judgment, which was Caro's obligation to transfer her interest to Philip in the land that he acquired in 1975. Plaintiffs contend that since Caro has not transferred her interest to Philip at the time of the December 5, 1994 judgment, the judgment was invalid because the suspensive condition was not met. However, since we are reversing the trial court's judgment of partition in kind, we find that this argument is moot. Notwithstanding, the trial court's judgment regarding Caro's obligation to transfer her interest to Philip is valid.
Finally, plaintiffs argue that the trial court's judgment is vague regarding the allocation of costs of defendants' surveyor. We agree and amend the trial court's judgment so that the allocation of costs are for the plat prepared by defendants' surveyor that was requested by the trial court.

CONCLUSION
For the foregoing reasons, the judgment of the trial court regarding the partition of the entire 13.01 acres and the family home is reversed. It is hereby ordered that this property be partitioned by licitation. The matter is remanded for further proceedings in accordance with the views expressed herein. Further, the trial court's judgment regarding the allocation of the costs of defendants' surveyor is amended to just the plat prepared by defendants' surveyor at the request of the trial court. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendants.
REVERSED IN PART; AFFIRMED AND AMENDED IN PART; AND REMANDED.
*377 
*378 
NOTES
[1] Judge William N. Knight of the Thirty-first Judicial District participated in this decision as judge Pro Tempore by appointment of the Louisiana Supreme Court.